## 11552

### WYSE *ET AL.* v. WOLFE, ATTY. GEN. *ET AL.*

(123 S. E., 818)

1. CERTIORARI—CANNOT BE USED TO CONTROL GOVERNOR'S DISCRETION OR REMEDY DEFECT IN LAW.—Certiorari cannot be used to control the discretion lodged by law in the Chief Executive or to remedy a defect in the law.

2. CERTIORARI—WILL NOT LIE TO REVIEW MISTAKES, WHERE COURT ACTED WITHIN ITS DISCRETION.—Where Court has acted within its discretion, and there has been no disregard of prescribed procedure, certiorari will not lie to review errors or mistakes in matters of discretion.

3. CERTIORARI—WILL NOT LIE TO ANNUL COUNTY BOUNDARY ELECTION FOR DEFECT IN LAW OR UNWISE EXERCISE OF GOVERNOR'S DISCRETION AS TO NOTICE.—Certiorari does not lie to annul election as to change of county boundaries for insufficient provision of statute relating thereto (Civ. Code, 1922, §§ 724, 732), or unwise exercise of Governor's discretion as to time of notice.

Petition in the original jurisdiction of the Supreme Court by W. H. Wyse and others against Samuel M. Wolfe, Attorney General, and others, as the State Board of Canvassers. Petition dismissed.

*Mr. J. Fraser Lyon* for petitioners.

*Mr. S. M. Wolfe, Attorney General,* for the respondents.

July 18, 1924.

The opinion of the Court was delivered by Mr. Justice Fraser.

The petitioners thus state their case:

"On February 19, 1924, an election was ordered by the Governor to be held on the 4th day of March, 1924, upon the question of cutting off a certain part of the County of Hampton and annexing same to the County of Beaufort. The order or proclamation of the Governor was sent to the election officers in Hampton County, and was printed in the Hampton County Guardian, a newspaper published in

the town of Hampton and bearing date February 27, 1924.

"It does not appear by the record that the issue of the newspaper of the above date was circulated among the electors residing within the territory affected on the day of publication. On the contrary, it does appear that on the 29th day of February, 1924, the newspaper was mailed to 40 newly registered voters, there being 88 registered voters on the registration list. At the election 6 electors were permitted to vote, 5 of whom voted against changing the lines, and 1 in favor thereof. There were on the registration books at least 15 white people, who were duly qualified to vote in the election. It appears, by a statement of the County Treasurer, that approximately 15 white people had paid their taxes prior to January 1, 1924, but it does not appear how many negroes were qualified to vote. Numerous persons offered to vote, who were not permitted to do so, because they did not present proof of payment of taxes before the 1st of January, 1924.

"Aside from the four days' notice to less than one-half of the registered voters of holding this special election, the impression given among those who had heard that there was to be an election was that it would not be held on the day appointed, as appears by the affidavits of Hon. Niels Christensen *et aliorum,* and it also appears that those who had heard that the election was to be held on the 4th day of March, 1924, understood, by reason of the negotiations between Senators Lightsey and Christensen, that the election would not be held on that day."

Argument:

"The points desired to be urged upon this Court as to why the election should be held null and void are the insufficiency in length of time fixed by the proclamation of the Governor for holding the election, and the short notice given some electors, and no notice given to others.

"Section 732, Code of Laws of 1922, Volume 3, provides for the holding of elections to change county lines.

Section 724 provides that, 'within twenty days after receipt of the report of the commission, the Governor shall order an election in the territory proposed to be cut off for the new county, to be held within sixty (60) days from the date of the order.'

"In the present case, although the Governor might have ordered the election 60 days after the 19th of February, 1924, he chose to order same only 14 days thereafter. The election should have been ordered more than 30 days from the date of the order, so as to give qualified electors an opportunity to register and hold their registration certificates at least 30 days before the date of the election, as provided under Section 207 of the Code of Laws of 1922, Volume 3, This right, contemplated under the law, has been denied them in this case, by reason of the shortness of time fixed in the Governor's proclamation for holding the election.

"It is quite evident that fair and reasonable notice was not given to all of the qualified electors of the territory affected. The most that can be said is that copies of the newspaper containing notice of the election to be held were mailed to 40 less than one-half of the qualified electors, and that only 4 days, including Sunday, before the election. We have the anomalous condition that our Statute provides no notice for either general or special elections.

"In the case of general elections, the time fixed by Statute for holding same is, as a matter of law, sufficient to charge all qualified electors with knowledge thereof; but the Statute prescribes no time for holding special elections, and makes no provision for giving notice thereof. We take the position that no election may be lawfully held without reasonable notice to all of the electors interested. and that, in the case of special elections, this due or reasonable notice must be larger or greater than in the case of general elections, the time of which latter is generally known and understood by the general citizenship.

"Although the statute is silent as to giving notice, adequate notice should be given, so that all qualified electors might have an opportunity to cast their ballot. To permit the contrary would enable election officers to publish notice of election a day or so before the time for holding the election, and thus prevent a fair and full expression of the will of the people, which would be like a Star Chamber proceeding, not countenanced in this land of liberty. In a sparsely settled community, like that under consideration in this case, where communication is infrequent, which is composed almost exclusively of a rural population, 4 days' notice, 6 days' notice, or indeed 14 days' notice, would be, we respectfully submit, held, as a matter of law, to be entirely inadequate and unreasonable, and that such notice as would be adequate and reasonable in such a case would be not less than 30 days' notice by advertisement in a newspaper in circulation in the territory affected or on posters.

"We have no authority to cite precisely in point to sustain the above proposition, for the reason that in all of the cases which we have examined the statute prescribed the nature of the notice and the time of publication thereof. That reasonable notice of some kind is an absolute requirement for holding any valid election is recognized by all of the authorities we have found on the subject. 'It is doubtless perfectly true that, where the election has been held at the proper time and at the proper place, and the electors have had notice and participated in it, the want of such notice as the law provides will not render it void. But if it appear that due notice has not been given, and that a portion of the electors have been thereby deprived of their right to vote, and particularly if the number thus deprived is sufficient to have changed the result, if they had voted on one side or the other, in such case the election is clearly void.' McCrary on Elections, c. 7, par. 179. 'It is, of course, more important and essential that due and regular notice be given

of an election to fill a vacancy than such notice be given of the regular election provided by law, for the reason that there is less probability that the electors will be informed of the former without such notification.' McCrary on Elections, c. 7, par. 182."

1-3   It will thus be seen that there are two grounds of dissatisfaction, namely: An unwise exercise of discretion on the part of the Governor; and a defect in the election law. This is a proceeding *in certiorari*. *Certiorari* cannot be used to control the discretion lodged by law in the Chief Executive, or to remedy a defect in the law. The province of *certiorari* is declared in *State v. Senft*, 2 Hill, 369:

"The writ of *certiorari* is a common-law remedy, to correct errors in law of inferior jurisdiction." Corpus Juris, vol. 11, pp. 106 ,107.

"The writ will not lie to review errors or mistakes in matters of discretion, where the Court has acted within its jurisdiction, and where there has been no disregard by the Court of the procedure prescribed by law."

The petition is dismissed.

MESSRS. JUSTICES WATTS, COTHRAN and MARION concur.

MR. CHIEF JUSTICE GARY did not participate.